## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Wilma Carr House

v.

Freddie William Lewis et al.

March 26, 1982

Case No. (Law) 11,827

By JUDGE HENRY L. LAM

I have now reached my decision in this case and the same is set forth herein. Before I announce same, I will inform you that I am perplexed at being asked to rule in this particular case. Generally, this type of decision is made by a jury and I have been quite concerned about my sole responsibility to judge the plaintiff's injuries. Furthermore, I found Mr. Lewis to be a person worthy of respect and it is difficult to say to him that he was at fault, particularly when we are dealing with such extensive damages.

But find him at fault, I must. Mr. Clarkson ably argued that the defendant had done nothing wrong. And if we were to measure his driving by percentage, then certainly he erred only by a small amount. He was sober, was within the speed limit, was alert, and *apparently* was maintaining proper control of his vehicle. He saw John Doe veer toward the plaintiff; recognized the ensuing emergency and knowingly attempted to arrest the forward progress of his own vehicle. But herein lies the error. Although he judiciously applied his brakes he was unable to stop prior to colliding with the plaintiff. Lawyers will argue that since the plaintiff stopped without colliding with John Doe, then it proves that the defendant erred when he could not stop. This type of rationalization

is too simple and does not objectively concern itself with the opportunity to see and avoid, and other forces of physics active, missing, or altered in each individual case.

Probably by oversight (since there is no evidence of momentary inattention) Mr. Lewis did not recognize that under the then existing conditions he was following at a speed and at a distance that did not allow him to stop when the sudden requirement to stop arose.

The case of *Maroulis v. Elliott*, 207 Va. 503 (1966), appears to be the leading case dealing with "emergency" stopping. Under the facts found therein, Maroulis was presented with a sudden and unanticipated requirement to stop. The facts show no prior actions on Maroulis's part that were different from the other cars in the caravan, or any actions that appeared to be inherently unsafe. But he did not stop and he did collide with the vehicles ahead of him, and on page 509, the court said:

> It was the duty of Maroulis to keep a reasonable lookout for the sudden stopping of vehicles ahead of him; to avail himself of such lookout, and to keep a reasonable distance between his automobile and the automobile immediately in front of him . . . The likelihood of sudden stopping is one of the reasons for requiring an automobile driver to keep a proper lookout, and to maintain a reasonable and prudent distance behind an automobile in front of him. Every driver knows that vehicles may stop suddenly for various reasons or causes. It is not necessary that one should foresee the cause for which a car may stop; but if he is prudent he must recognize the possibility of a sudden stop.

And then, on page 510 the court said:

> If Maroulis failed in any one of his duties to keep a proper lookout, to have his car under proper control, or to maintain a reasonable and prudent distance behind the car in front of him, then he took the risk of a collision

with the car in front, a natural and probable consequence if the leading car suddenly stopped.

Therefore, as in *Maroulis*, I find that Mr. Lewis's negligence was the proximate cause of the collision that occurred.

Having ruled upon the issue of liability, then next to be determined is the amount of damages. First, the question of causation. Were the plaintiff's injuries caused by this accident? If so, then the extent thereof and were they temporary or permanent? Also, were there other causes, such as drug abuse, which unduly prolonged recovery or which could be construed as an "intervening" cause; hence, not the responsibility of the defendant? And lastly, in this particular case we are concerned with "pain." Was the pain real, imagined, or was it a result of the plaintiff's malingering?

To answer these questions we have the testimony of five witnesses; the plaintiff, three doctors, and a therapist.

Although her injuries did not manifest themselves immediately, the plaintiff testified that the complained of pain began shortly after the accident and has continued to this time. She also testified that her injuries did not arise prior to the accident.

Regardless of the plaintiff's testimony, Dr. Arkins clearly testified that from the history this accident was the cause of the plaintiff's injuries, and his testimony was not contradicted. And Dr. France (who testified by deposition) confirmed that the injuries arose out of this accident. Concerned with the impact and the resulting injuries, he said, "I think that it is not unusual in that the result of the injury does not always correspond to the accident, so I'm not surprised by that."

There is no reason for the court to here recite the evidence as to the extent of plaintiff's injuries. Although unusual in severity to have occurred from this collision, the evidence is that such injuries did so occur, and that they are extensive, permanently disabling, expensive to treat, and are extremely painful. In addition to the plaintiff's own testimony as to her pain and suffering, medical testimony supported her testimony, disposing of any questions as to her malingering. It is also clear

that she developed a problem with drug abuse, but there was no credible evidence showing this to have been an intervening cause having a distinct effect upon the injuries caused by the accident. Past treatment has been extensive. It has involved five months of hospitalization, with additional hospitalization anticipated. Medical expenses approximated $35,000 and are continuing.

At the time of the accident, January 4, 1980, the plaintiff was employed and her income averaged $200 per week. She has been unable to work since that time. Since the plaintiff did marry following the accident, it is reasonable to infer that the continuing full-time employment of the plaintiff is speculative; hence, consideration of income production has been limited.

For the reasons given, I find for the plaintiff and fix her damages at $300,000.00.